**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**GARY W. SIDES**                                                                                          **PLAINTIFF**

**V.**                             **CASE NO.: 2:10CV00163 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary W. Sides appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.     Background:**

On February 1, 2007, Mr. Sides protectively filed for DIB and SSI alleging disability beginning July 31, 2006, due to degenerative disc disease of the lumbar spine, chronic pain syndrome in the left shoulder, a learning disability, depression, and anxiety. (Tr. 69-71, 83-84, 92-95, 270)  He had acquired sufficient quarters of coverage to remain insured through September 30, 2009.  (Tr. 16)

Mr. Sides's claims were denied initially and upon reconsideration. (Tr. 26-27, 268-69) At his request, an Administrative Law Judge ("ALJ")[1] held a hearing on March 15, 2010, at which Mr. Sides appeared with his lawyer. (Tr. 280-306) At the hearing, the ALJ heard testimony from Mr. Sides, his wife, and a vocational expert ("VE"). (Tr. 285-86, 289-90, 299-305)

The ALJ issued a decision on April 5, 2010, finding that Mr. Sides was not disabled for purposes of the Act. (Tr. 14-24) On August 17, 2010, the Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 5-7)

Mr. Sides was forty-two years old on the alleged onset date. (Tr. 22) He had a sixth grade education and had worked as a farm hand. (Tr. 22, 96-106, 200) At the time of the hearing, he lived with his wife and children. (Tr. 109, 288)

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of

---

[1] The Honorable W. Thomas Bundy.

impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)-(g).

The ALJ found that Mr. Sides had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 16)  He found that Mr. Sides had the following severe impairments:  degenerative joint disease of the lumbar spine, chronic pain syndrome of the left shoulder, anxiety disorder, and depression.  (Tr. 16)  The ALJ found Mr. Sides did not have an impairment or combination of impairments, however, that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926).  (Tr. 17)

The ALJ determined Mr. Sides had the residual functional capacity to perform light work, except that he could only occasionally reach overhead with his non-dominant hand and was limited to work where, "interpersonal contact is routine, but superficial; public contact is no more than incidental to the work performed; complexity of tasks is learned by experience; uses judgment within limits; and where supervision required is little for routine, but detailed for non-routine work."  (Tr. 18)  He found Mr. Sides could not perform his past relevant work.  (Tr. 22)  Relying on the testimony of the VE, he

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

found, however, that Mr. Sides had the residual functional capacity to perform jobs that existed in significant numbers in the national economy. (Tr. 23)

### III. <u>Analysis</u>:

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.    *Impairments in Combination*

Mr. Sides claims that the ALJ erred by failing to consider his impairments in combination. Specifically, he argues the ALJ did not properly consider his alleged learning disability in combination with his other impairments. The Commissioner replies that, when deciding whether Mr. Sides met a listing, the ALJ considered all of Mr. Sides's impairments, both mental and physical, in combination.

In his decision, the ALJ fully summarized all of Mr. Sides's medical records and separately discussed each of Mr. Sides's alleged impairments, including his learning disorder. He expressly found that Mr. Sides did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Based on the language in the ALJ's opinion, it is clear that he properly considered the combined effects of all of Mr. Sides's impairments. *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011)(holding that ALJ properly considered combined effects of claimant's impairments where ALJ gave a synopsis of claimant's medical records, discussed each alleged impairment, and stated that he considered whether the combination of impairments met or equaled a listed impairment)(citing *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992)).

    C.    *Subjective Complaints*

Mr. Sides also claims the ALJ erred by disregarding his subjective complaints of pain. He argues that the record contains documentation of his subjective complaints of back and shoulder pain, difficulty reaching overhead, and difficulty sleeping, but that the ALJ "allowed personal observations" to "influence his judgment." (#10 at p. 19)

A review of the record reveals that, in this case, the ALJ appropriately considered Mr. Sides's subjective complaints of pain under the standard set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). In *Polaski*, the Court held an ALJ must consider the claimant's daily activities; duration, frequency, and intensity of pain; dosage,

effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)(citing *Polaski*, 739 F.2d at 1322)). Other factors to be considered are the claimant's work history and whether there is objective medical evidence to support the subjective complaints. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008). An ALJ may not discount a claimant's subjective complaints, however, solely because they are not supported by objective medical evidence. *Id*. An ALJ is not required to discuss each *Polaski* factor as long as he or she acknowledges and considers the relevant factors before discounting a claimant's subjective complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Here, the ALJ acknowledged Mr. Sides's alleged difficulty in reading, writing more than simple words, and being around others. He also acknowledged Mr. Sides's testimony that he needed to use a chair when taking a shower, needed extra time to get dressed, needed assistance from his children to do chores, had difficulty sleeping, and had pain and burning in his collar bone and back. (Tr. 19) The ALJ concluded Mr. Sides's complaints of disabling pain were not supported by the record. (Tr. 21-22) Substantial evidence supports the ALJ's conclusion.

On November 21, 2005, Mr. Sides reported to White River Rural Health Center complaining of pain in his lower back from lifting a stove. (Tr. 138) According to the progress notes, however, he had no tenderness in his low back; could touch his fingertips

to the floor bending at the waist with his knees straight; could heel/toe walk; was 5/5 for leg strength; and had a normal gait. (Tr. 138) Mr. Sides was given a prescription for Lortab and Cyclobenzaprine. (Tr. 138)

On November 28, 2005, an MRI of Mr. Sides's cervical spine revealed "degenerative change of the facets with mild hypertrophy of the ligamenta flava," but "no significant disc protrusions" were seen. (Tr. 126) On August 7, 2006, Jessie D. Moore, M.D., reviewed Mr. Sides's MRI and examined him. He noted that Mr. Sides did not require injections, but ordered refills of prescriptions for pain medication. (Tr. 128)

The ALJ considered the progress notes from Mr. Sides's monthly visits to White River Rural Health Center ("White River") from May, 2007, through December, 2009. (Tr. 19-21) As the ALJ noted, the records indicate that Mr. Sides mostly sought treatment at White River for refills of his medications and for follow-up care of his chronic pain syndrome; anxiety state NOS; and traumatic arthropathy, multiple sites. (Tr. 149-157, 178-190, 203-205, 208-238, 255-263) On the progress note for each visit to White River, physicians noted that Mr. Sides was there for, "[f]ollow-up from previous visit/complaint, doing well with current medications/treatments, needs medication refilled, no new complaint." (Tr. 151) This notation, or one very similar to it, is written on nearly every progress note from White River. (Tr. 151, 153, 155, 157, 180, 182, 184, 186, 188, 190, 203, 205, 205, 209, 211, 213, 215, 217, 219, 221, 223, 225, 228, 230, 232, 234, 236, 238, 257, 259, 261, 263)

The Court notes that only one time during his nearly three years of treatment was it noted that Mr. Sides requested a stronger pain medication. Additionally, November 1, 2007, was the only date on which Mr. Sides rated his pain at a level "4" on a scale ranging from 0 to 5. On all of the rest of his visits, he rated his pain at a 3 or less.[3]

The ALJ also considered the lumbar residual functional capacity questionnaire completed by Jesse D. Moore, M.D. In that report, Dr. Moore stated that Mr. Sides had exhibited an abnormal gait and a positive straight leg raise test bilaterally due to chronic back pain. Dr. Moore concluded that Mr. Sides had the ability to sit for about four hours in an eight-hour day and stand or walk about four hours in an eight-hour day, with the option to alternate between standing and sitting. (Tr. 241-245)

The ALJ concluded that Dr. Moore's assessment was not entitled to great weight, however, because it was not supported by any objective medical evidence in the record. (Tr. 22) There were no progress notes from White River supporting a positive straight leg raise test or abnormal gait, muscle atrophy, spasms, or loss or range of motion. As set forth above, notes from Mr. Sides's examinations, instead, indicate he was doing well on his medications.

---

[3] The medical records from White River indicate that from May, 2007, to December, 2009, Mr. Sides rated his pain at 0 five times; at 1 five times; at 2 twelve times; at 3 nine times.

At the hearing, Mr. Sides testified about side effects of his medications, including a rash. The medical records do not, however, indicate that Mr. Sides ever complained of side effects from his medication to his treating physicians.

The ALJ also considered Mr. Sides's alleged limitations due to a learning disorder and anxiety. The ALJ noted, however, that Mr. Sides had been able to work with these impairments in the past. When Mr. Sides last worked, in 2006, he owned and operated a second-hand furniture business. (Tr. 78-79, 85) Mr. Sides testified that he quit working in 2006 because he closed his business, not because of his impairments. (Tr. 84) There is no evidence that Mr. Sides's mental impairments had worsened. In fact, as the ALJ noted, Mr. Sides's treatment records indicated his ability to handle social situations had improved. (Tr. 266-67)

A review of the record reveals that the ALJ appropriately considered Mr. Sides's daily activities, medication, side effects of medication, and inconsistencies between his complaints and the objective medical evidence. The ALJ's credibility determination is supported by substantial evidence in the record. *Boettcher*, 652 F.3d at 863 (ALJ's credibility determination is entitled to deference if supported by good reasons and substantial evidence).

    D.    *Residual Functional Capacity*

Mr. Sides claims the ALJ's residual functional capacity finding is not supported by substantial evidence. (#10 at p. 7) The ALJ bears "the primary responsibility for


assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted). A claimant's residual functional capacity is a medical question, and at least some medical evidence must support the ALJ's residual functional capacity determination. *Id*.

The ALJ may reject the opinion of any medical expert that is inconsistent with the medical record as a whole. *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011)(citing *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008)). It is the ALJ's function to resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)(quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). Also, a treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner, whose job it is to make the ultimate disability determination. *Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011)(citing *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007)).

Here, the ALJ found that Mr. Sides was capable of performing light work[4] except that he had no more than occasional ability to reach overhead with his non-dominant hand. Additionally, the ALJ found that because of Mr. Sides mental conditions he was

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when in involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

limited to unskilled work,[5] where interpersonal contact was routine, but superficial; public contact was no more than incidental to the work performed; complexity of tasks was learned by experience; used judgment within limits; and where supervision required would be little for routine, but detailed for non-routine work. (Tr. 18)

Mr. Sides claims the ALJ did not properly consider his mental impairments when assessing his RFC. Specifically, Mr. Sides argues that the Global Assessment of Functioning ("GAF") scores assigned to him indicate that he would "experience significant difficulty in the workplace."[6] (#10 at p. 20)

A GAF score does not have a direct correlation to the severity requirements in mental disorders listings. 65 Fed.Reg. 50746, 50764–65 (2000). The DSM–IV is a classification of mental disorders that was developed for use in clinical, educational, and research settings. Specific diagnostic criteria included in the DSM–IV are meant to serve as guidelines to augment clinical judgment and are not meant to be used in a cookbook fashion.

Here, the ALJ considered the records of Mr. Sides's treatment at Health Resources of Arkansas, including his GAF scores. (Tr. 21-22) Treatment notes from August, 2009,

---

[5] Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a); 20 C.F.R. § 416.968(a).

[6] *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed.) (DSM–IV), published by the American Psychiatric Association, states that a GAF score of 41 to 50 generally indicates serious impairment in social, occupational, or school functioning. (DSM–IV 32)

indicate Mr. Sides met with Licensed Clinical Social Worker, Sonja Robbins, and reported that he had difficulty in public situations and problems sleeping.[7] (Tr. 248) Ms. Robbins assigned Mr. Sides a GAF score of 45. (Tr. 248) Ms. Robbins met with Mr. Sides again on August, 21, 2009. (Tr. 265) The progress notes from Ms. Robbins's meeting with Mr. Sides on December 14, 2009, indicate that Mr. Sides was feeling better with treatment. She assigned a GAF score of 50. (Tr. 266) Finally, during a visit on February 17, 2010, Ms. Robbins noted that Mr. Sides was able to make short trips to Wal-Mart, but was not able to go into a restaurant. (Tr. 267) She assigned a GAF score of 48. (Tr. 267)

The ALJ also considered the opinions of the state agency physicians. (Tr. 19, 21) State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record. 20 C.F.R. § 416.927(f); SSR 96-6p.

Here, Ronald Crow, M.D., and Jerry L. Thomas, M.D., assessed Mr. Sides's physical RFC. Dr. Crow found, in June, 2007, that Mr. Sides was capable of light work with a limitation on overhead reaching due to traumatic arthropathy of his left shoulder. (Tr. 139-46) Dr. Thomas reviewed the evidence and agreed with Dr. Crow. (Tr. 146)

---

[7] Under 20 C.F.R. §§ 404.1513(a) and 416.913(a), a licensed or certified psychologist qualifies as an "acceptable medical source" who can provide evidence to establish a medically determinable impairment. The ALJ may consider "other sources" such as therapists and social welfare agency personnel to show the severity of an impairment and how it affects the claimant's ability to work, but not to establish the impairment. See 20 C.F.R. §§ 404.1513(d) and 416.913(d).

Jay Rankin, M.D., evaluated Mr. Sides's mental RFC in September, 2007. He found that Mr. Sides was "able to perform work where interpersonal contact is routine but superficial, e.g. grocery checker; complexity of tasks is learned by experience, several variables, uses judgment within limits; supervision required is little for routine but detailed for non-routine." (Tr. 161)

Here, the ALJ properly considered the opinions of the state agency physicians, along with the opinions of Mr. Sides's other treating physicians and counselors, when he limited Mr. Sides to unskilled work. (Tr. 18-22) Substantial evidence supports the ALJ's conclusion that Mr. Sides had the residual functional capacity to perform a reduced range of light work.

E. *Opinions of Treating Physician*

Mr. Sides argues that the ALJ failed to properly consider the opinions and findings of Dr. Moore, his "primary treating physician," who completed a lumbar spine residual functional capacity questionnaire on March 20, 2008.[8] In the questionnaire, Dr. Moore opined that Mr. Sides was limited to lifting and carrying less than 10 pounds frequently, but 20 pounds occasionally. (Tr. 244) He stated Mr. Sides had the ability to sit about four hours in an eight-hour day, stand or walk four hours in an eight-hour day, and needed to have the option to alternate between standing and sitting, at will. (Tr. 243) Dr.

---

[8] Mr. Sides refers to Dr. Moore as his "primary treating physician"; however, at White River he was more frequently treated by Robert R. Williamson, M.D. (Tr. 149-58, 186-90, 203-39, 259-63)

Moore did not find Mr. Sides had any significant limitation in repetitive reaching, handling, or fingering. (Tr. 244)

The ALJ may reject the opinion of any medical expert that is inconsistent with the medical record as a whole. *Martise v. Astrue*, 641 F.3d at 909, 926 (8th Cir. 2011) (treating physician's opinion properly discounted when inconsistent with treatment notes or with medical evidence as a whole). It is the ALJ's function to resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)(quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). And a treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner, whose job it is to make the ultimate disability determination. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

Here, as set forth above, the ALJ concluded that Dr. Moore's assessment was not entitled to great weight, because it was not supported by the objective medical evidence in the record. (Tr. 22) There are no progress notes from White River supporting his statement that Mr. Sides had a positive straight leg raise test or abnormal gait. The medical records do not indicate Mr. Sides had any muscle atrophy, spasms, or loss or range of motion. Instead, the progress notes from White River indicate that Mr. Sides was doing well on his medications. Further, progress notes from White River indicate

that he had some limitation in overhead reaching due to traumatic arthropathy in his shoulder. (Tr. 134-137)

Further, there is at least some question as to whether Dr. Moore can correctly be characterized as a treating physician. The record reveals that Dr. Moore treated Mr. Sides on only three occasions before completing the lumbar spine residual functional capacity questionnaire on March 20, 2008. (Tr. 241) Dr. Moore first treated Mr. Sides on August 7, 2006. (Tr. 128) He next examined him over a year later on January 24, 2008. (Tr. 178-79) Dr. Moore did not treat Mr. Sides again until two months later when he completed the questionnaire. See *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004)(discounting opinion of physician who had met with patient on only three occasions when she filled out checklist); see also 20 C.F.R. §§ 404.1527(d)(2)(I), 416.927(d)(2)(I) (2008)("Generally, the longer a treating source has treated [a claimant] and the more times [the claimant] [has] been seen by a treating source, the more weight [to be given] to the source's medical opinion").

There is substantial evidence to support the ALJ's decision not to give greater weight to Dr. Moore's opinion.

F.     *Development of the Record*

Finally, Mr. Sides argues that the ALJ erred by failing to develop the record on whether he had a diagnosed learning disability. While an ALJ does have a duty to develop the record, this is not a never-ending duty. The ALJ is not required to disprove

every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011)(citation omitted). The ALJ is required to order medical examinations and tests only if the medical records presented do not give sufficient medical evidence to determine whether the claimant is disabled. *Id*. (citing *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986)).

Here, the ALJ noted there was evidence from a licensed clinical social worker stating that Mr. Sides had a history of a learning disorder and attended special education classes while in school and noted that Mr. Sides had trouble formulating his thoughts and responses to questions and did not read or write well. (Tr. 16, 21) The ALJ did not dispute that Mr. Sides had a learning disorder. Instead, he assessed this evidence along with the other evidence in the record indicating that he had been able to work in the past with the same impairment. See *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (claimant's ability to work in the past with alleged impairments demonstrated they were not disabling); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (claimant not disabled by mental impairment where he worked for years with "cognitive abilities he currently possesses"). Mr. Sides was able to work as a farm hand and to own and operate a second-hand furniture business with his alleged learning disorder. (Tr. 78-79, 85) The record regarding Mr. Sides's learning disorder was sufficiently developed by the ALJ.

IV.   **Conclusion:**

There is sufficient evidence in the record as a whole to support the Commissioner's determination that Gary Sides was not disabled within the meaning of

the Act.  Accordingly, his appeal is DENIED, and the Clerk is directed to close the case, this 18th day of October, 2011.

```
                        _____
                              UNITED STATES MAGISTRATE JUDGE
```